UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Miami Division)

Civil Action:

ARTICE PEOPLES,

    Plaintiff,

vs.

CITY OF MIAMI, a Florida municipal corporation; RODOLFO LLANES, individually; FABIO SANCHEZ, individually; FRATERNAL ORDER OF POLICE, WALTER E. HEADLEY, JR., MIAMI LODGE NO. 20, an employee organization, and JAVIER ORTIZ, individually,

    Defendants.
_____/

## **Complaint for Damages and Injunctive Relief**

**Count I: Artice People's Claim Under 42 U.S.C. § 1983 for Violation Of his Fifth and Fourteenth Amendment Rights to Due Process**

Plaintiff, Artice Peoples, sues defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20, and Javier Ortiz, and alleges:

### Introduction and Summary

1.    This is an action by Artice Peoples, a former City of Miami police officer, whom Javier Ortiz — at the time the president of the Fraternal Order


**The Amlong Firm** • 500 Northeast Fourth Street • Fort Lauderdale, FL  33301 • 954.462.1983

of Police lodge that represents the City's law enforcement officers — bullied into signing an irrevocable form-letter of resignation by threatening immediate arrest, ensuing media shame, termination and forfeiture of pension benefits.  The investigation of Mr. Peoples was overseen by Fabio Sanchez, an Internal Affairs sergeant.  The use of irrevocable, form-letter resignations was an unofficial policy or custom within the City of Miami Police Department, known to and adopted by Rodolfo Llanes, the chief of police at the time and the addressee and recipient of each resignation.  The police department enlisted then-Lt. (now Capt.) Ortiz, **One**, to secure irrevocable, on-the-spot resignations from at least four City police officers under the guise of his being, as FOP president, their representative in the Internal Affairs investigations, and, **Two**, to short-circuit the Florida statute that specifies the rights of law enforcement officers who are subject to internal-affairs investigation. Mr. Peoples sues all defendants unfrt 42 U.S.C. § 1983 for both violating his rights to due process, and for conspiring to do so. Finally, Mr. Peoples sues Mr. Ortiz and the FOP for fraudulently representing that the City had evidence he participated in the tow-truck scheme.  He seeks damages, including punitive damages, injunctive relief his attorney's fees and litigation expenses.

## Jurisdiction and Venue

2. These claims arise under the due process clause Fifth Amendment to the United States Constitution, as extended to the States by the Fourteenth Amendment, and 42 U.S.C. § 1983.  This Court has

jurisdiction pursuant to 28 U.S.C. § 1331.  It has supplemental jurisdiction pursuant to 28 U.S.C. § 1337 over state-law claims that are so related to § 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. The claims being sued upon arose in Miami-Dade County, Florida, which is where the defendants at all material times resided or did business.

**Parties**

4. Artice Peoples was at all times material a City of Miami police officer whose property right to his employment was protected by the City of Miami Civil Service Ordinance; §§ 112.531-535, Fla. Stat., the so-called "Law Enforcement Officers' Bill of Rights," and the option to take any proposed discipline to either binding arbitration under the collective bargaining agreement's grievance procedure or to the Civil Service Board.

5. Defendant City of Miami is, and at all times material was, a Florida municipal corporation that operated towards Mr. Peoples under color of state law and the ability of which to terminate its police officers was limited to instances in which either:

   a. an arbitrator would find, under the collective bargaining agreement, that it had "proper cause" to do so, or

   b. the Civil Service Board would find by a majority vote that the police officer was guilty of a firing offense.

6. Defendant Rodolfo Llanes was at all times material Miami's Chief of Police and acted towards Mr. Peoples pursuant to the authority bestowed upon him by the City and under color of state law. He is sued in his individual capacity.

7. Defendant Fabio Sanchez was at all times material a sergeant of police in the Internal Affairs section who acted towards Mr. Peoples pursuant to the authority bestowed upon him by the City and under color of state law. He is sued in his individual capacity.

8. Defendant Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20 ("FOP"), is the public-employee labor union that represents police officers, sergeants, lieutenants and captains employed by the City of Miami, including in disciplinary matters. In this matter, however, the FOP was a wilful participant in the deprivation of Mr. Peoples's right to due process through the actions Javier Ortiz, its president.

9. Defendant Javier Ortiz was at all times material president of the FOP. Mr. Ortiz at all times material acted towards Mr. Peoples not under color of state law as a lieutenant of police, but rather as a policy-making official of the police union who was a willing participant in the City's and the individual defendants' scheme to deprive Mr. Peoples of his right to due process. He is sued in his individual capacity. Additionally, at all times material, Mr. Ortiz was acting towards Mr. Peoples within the scope of his employment as president of the FOP, i.e.:

  a. representing police officers who are accused of wrongdoing by Internal Affairs was part of Mr. Ortiz's job as FOP president;

  b. Mr. Ortiz's conduct towards Mr. Peoples occurred while he was performing that duty as an FOP representative, and

  c. Mr. Ortiz's conduct was motivated by a desire to maintain or improve the relationship between the FOP and the City of Miami.

### General Allegations as Relates to Count I

10. In or about mid-December 2016, one police officer, two police aides and several tow-truck operators were arrested following an FBI investigation into tow-truck operators' bribing police officers during the 2013-2014 period when Mr. Peoples worked as a patrol officer in Little Havana. The City had made no arrests.

11. Mr. Peoples, whom the City had relieved of duty December 2, 2014, was summoned February 14 or 15, 2017 to come to Internal Affairs February 17 to review his investigative file.

12. Following a five to six hour period, during most of which Messrs. Ortiz and Sanchez were behind closed doors, Mr. Ortiz entered the room in which Mr. Peoples had been waiting and began screaming at him:

  a. "Artice, they're going to bury you,"

  b. "They want you gone,"

  c. "Artice, you're going to end up losing your pension,"

  d. "If you don't sign their resignation, you're going to jail,"

and capped off the resignation pitch by telling Mr. Peoples that if he did not sign the resignation form, his son would see him on television doing the "walk of shame" into jail.

13. Mr. Peoples told Mr. Ortiz that if Mr. Ortiz were not going to assist him in fighting the allegations, Mr. Peoples would simply telephone the FOP's lawyer, Robert Buschel, Esquire, whom Mr. Peoples had individually retained to represent him at in the Internal Affairs investigation.

14. Mr. Ortiz responded that he did not want Mr. Buschel involved and asked Mr. Peoples:  "Who pays him the bigger retainer each month?"

15. When Mr. Peoples questioned Mr. Ortiz about taking any termination to arbitration pursuant to the collective bargaining agreement, Mr. Ortiz responded:  "Arbitration needs to be voted on.  We'll vote against you."

16. Although Mr. Peoples sought to have Mr. Buschel represent him when he returned to Internal Affairs February 21 to give a formal statement, Mr. Buschel texted Mr. Peoples that day:   "Javi told me to stand down.  He[']ll go in with you. . . ."

17. At 11:19 p.m. Chief Llanes was telephoned to arrange his immediate acceptance of the resignation that Mr. Ortiz had obtained.

18. When the Florida Department of Law Enforcement's Bureau of Standards inquired about the City's investigation — in connection with the coerced resignation of another police officer, Melanie Ortiz, that Mr. Ortiz

had obtained through threats similar to those made to Mr. Peoples — Jose A. Rodriguez, the major in charge of Internal Affairs, informed it the investigation was ongoing and if FDLE needed more information, it should contact Shanetta Green, an internal-affairs detective.

    19.    Mr. Rodriguez wrote the FDLE July 14, 2017 that:

> Officer Ortiz used her position to steer business towards, or otherwise assist, pirate tow truck operators in soliciting motorists and towing their vehicles to corrupt collision repair companies who were also involved in the criminal solicitation. (See attached) [Handwritten]

    20.    Appended was a 12-page Inter-Office memorandum written to Mr. Rodriguez by Ms. Green, purporting to document numerous cell-phone and text communications between Ms. Ortiz and Armando Morales, a tow-truck driver notorious for prowling Little Havana with a police scanner, listening for accident calls.

    21.    The memo:

    a.    purported to quote not only a confidential source, but also tape-recorded undercover conversations in which Ms. Ortiz was alleged to have made self-incriminating statements;

    b.    accused Ms. Ortiz of, among other things, telephoning Mr. Morales from accident scenes, taking cash kickbacks, getting her personal car, a Nissan Maxima, painted for free at an outlaw body shop to which Mr. Morales routinely took vehicles and having damage to her marked police car surreptitiously repaired at the same body shop.

    22.    However:

      a.    Ms. Green admitted to FDLE in a November 20, 2017 e-mail that the City possessed no evidence against Ms. Ortiz:

> [W]e did have call logs, recorded calls, and uc [undercover] recordings but they belong to the FBI and would have to be requested thru them. We also had case files from the tow companies but they were also received thru the FBI and have been returned as well.
>
> Sorry that there is not much I can give you. . . [M]ost of the evidence received was thru the FBI because it was a federal case. . . . These were the last individuals that had involvement in the scheme we were investigating but not enough to go federal and without the evidence being released due to grand jury and no recorded hand to hand transactions it was not enough for the state to move on. They were all handled administratively and were provided the opportunity to review the evidence against them and to discuss with their representative of choice. Some chose to provide a <u>Garrity</u> statement and others simply resigned.

      b.    Ms. Ortiz had paid for her car to be painted with a money order from her bank.

      c.    Ms. Ortiz never damaged a marked police car; Ms. Green offered no evidence of any vehicle assigned to Ms. Ortiz ever having been damaged.

      d.    Notwithstanding that one police officer and two police aides were arrested and pleaded guilty, Mr. Morales was not arrested.

    23.    Ms. Green's reference in her e-mail to FDLE about "[t]hese were the last individuals that had involvement in the scheme we were investigating" refers to Mr. Peoples, Ms. Ortiz, Reynaldo Irias, Yesid Ortiz and Michael Bode:

      a.    Messrs. Irias and Ortiz each resigned May 10, 2017, having been summoned to Internal Affairs and told that if they did not resign, they would be fired;

      b.    The language of Messrs. Irias and Ortiz's resignations was almost a verbatim copy of the memo that Mr. Ortiz had presented to Mr. Peoples February 21, 2017:

> Effective immediately (5/10/17), I am voluntarily resigning from my position as a Miami Police Officer. No threats, rewards or promises have been made to me. This redline memorandum is irrevocable. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is a representative of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

      c.    Ms. Ortiz, who had never been suspended but in December 2016 became the first police officer whom Mr. Ortiz coerced into resigning, was handed a similar letter:

> I, Officer Melanie Ortiz P.I.N. 29186 voluntarily resign with no threats, rewards or promises from my position as a Police Officer with the City of Miami Police Department. This redline memorandum is irrevocable and my resignation will be effective immediately. I have spoken to my representative of choice, Lieutenant Javier Ortiz who is the President of the Miami Fraternal Order of Police. I am resigning for personal reasons and believe that this is the best option for myself and my family.

      d.    Ysed Ortiz said in a grievance that he filed concerning the coerced resignation that he had no idea what he was being accused of, but that Javier Ortiz had told him that he was aware of the situation and "[y]our best bet is to resign so you can keep your certification and your retirement, the FOP will most likely NOT represent you."

  e. Mr. Irias said in his grievance that he also had no idea why he had been summoned to Internal Affairs, but that a lieutenant told him that "we are recommending termination and I already talked to Javier Ortiz about this."

  f. When Maximilliano Valdes, a sergeant and at the time the FOP's secretary-treasurer, accompanied Mr. Bode to Internal Affairs to submit his resignation (after Mr. Bode's having admitted to the FBI under oath that he had taken kickbacks from pirate tow-trucks, and being warned by Mr. Valdes that he dare not deny doing so in a sworn statement to Internal Affairs or he would be prosecuted for perjury), Mr. Sanchez retrieved the form resignation letter — which he told Mr. Valdes had been "approved" by Mr. Ortiz.

 24. Although the City is resisting, and appealing to the District Court of Appeal, a Miami-Dade circuit court judge has ruled that Messrs. Irias and Ortiz can grieve their "resignations" and that an arbitrator would have jurisdiction to overturn them.

 25. Chief Llanes personal involvement included, **One**, accepting the irregular, cookie-cutter resignations — which, if the "resigning" police officers had truly been guilty of the kickback allegations, would have permitted each of them to escape justice for actual crimes they had committed, and, **Two**, had his name on the top of the termination recommendations in Messrs. Irias and Ortiz's files.

26. Municipal employees such as Mr. Peoples enjoy clearly established Fifth and Fourteenth Amendment rights not to be deprived of property or liberty without due process of law by being coerced into resigning their vested public employment.

27. The City of Miami, through Messrs. Llanes, Rodriguez and Sanchez, in each's official and individual capacities, and in concert with Mr. Ortiz and the FOP, deprived Mr. Peoples of his right to due process.

28. Mr. Llanes at all times material was:

    a. the City's official decision-maker in the termination of Mr. Peoples: he authorized and knowingly countenanced the use of coerced waivers of due process rights to police officers accused of wrongdoing, and

    b. its final policy maker: there was no meaningful review within the City of Miami government concerning the coerced "irrevocable" resignations.

29. As a direct, natural and proximate result of defendants' actions towards Mr. Peoples, Mr. Peoples has suffered damages, including but not limited to:

    a. lost earnings;

    b. diminishment of earning capacity; and

    c. emotional distress and mental anguish.

30. Each of the individual defendants, and the FOP, exhibited wilful disregard of Mr. People's clearly established constitutional rights to due

process, entitling him to recover punitive damages against each defendant other than the City of Miami.

31. If not enjoined by this Court to cease its deprivation of Mr. People's constitutional right to due process — including by being mandatorily enjoined to reinstate Mr. Peoples as a police officer, and to restore his benefits and seniority — the City of Miami would continue to deprive Mr. Peoples of:

    a.   his liberty right to his good names and

    b.   his property right to his employment as a police officer,

each without due process.

32. Plaintiff is entitled, pursuant to 42 U.S.C. § 1988, to recover his costs and litigation expenses, including a reasonable attorney's fee, for bringing this action.

WHEREFORE, Plaintiff, Artice Peoples, prays that this Court will grant judgment for him, and against defendants, City of Miami, Rodolfo Llanes, Fabio Sanchez, Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20, and Javier Ortiz:

**One**, determining that the City, the individual defendants and the FOP violated Mr. People's rights to due process under the Fifth and Fourteenth Amendments;

**Two**, enjoining the City, both preliminarily and permanently, to cease denying Mr. Peoples his liberty and property rights without due process and to reinstate him as a police officer, with full seniority and benefits;

***Three***, awarding compensatory damages against the City of Miami, the individual defendants and the FOP, jointly and severally, and awarding punitive damages against the individual defendants and the FOP;

***Four***, awarding costs, including attorney's fees and litigation expenses, against the City of Miami, the individual defendants and the FOP, jointly and severally, and

***Five***, granting such other and further relief as is just.

### Count II: Conspiracy Amongst City, Individual Defendants and FOP To Violate Peoples's Constitutional Rights

33. Plaintiff, Artice Peoples realleges, as if fully set forth in Count II, ¶¶ 1-32.

34. Mr. Ortiz and the FOP were willing participants with those defendants acting under color of state law to effect the coerced resignation of Mr. Peoples.

35. Mr. Ortiz was acting toward Mr. Peoples not as a lieutenant of police, but rather as:

    a. the FOP's policy maker in approving the "irrevocable," on-the-spot resignations, and

    b. the FOP and the City's executioner by:

        i. threatening jail, shame, termination and loss of pensions if Mr. Peoples and the other officers did not irrevocably resign;

        ii. telling Mr. Peoples's retained lawyer to "stand down" from accompanying Mr. Peoples to Internal Affairs for his formal statement.

36. Without the cooperation of Mr. Ortiz and the FOP, the City of Miami and its police officers identified in Counts I and II would not have been able to secure the "voluntary" resignation of Mr. Peoples.

WHEREFORE, Plaintiff, Artice Peoples, prays that this Court will grant judgment for him, and against defendants, Rodolfo Llanes, Fabio Sanchez, and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20, and Javier Ortiz:

**One**, awarding compensatory damages against the City, the individual defendants and the FOP, jointly and severally, and awarding punitive damages against the individual defendants and the FOP, and

**Two,** granting such other and further relief as is just.

### Count III: Fraud by Javier Ortiz and the FOP

37. Plaintiff, Artice Peoples realleges, as if fully set forth in Count III, ¶¶ 1-4 and 8-23.

38. Javier Ortiz, on or about February 17 and 21, 2017, falsely told Mr. Peoples that Internal Affairs had enough evidence against him to fire him and arrest him.

39. Mr. Ortiz, when he made those false statements, was doing so as the president of the FOP, as more particularly alleged in ¶ 9.

40. Mr. Ortiz knew at the time that he made those representations that they were false.

41. Mr. Ortiz nonetheless made those representations to Mr. Peoples to induce him to immediately and irrevocably resign and to forego his rights to either binding arbitration or an appeal to the Civil Service Board.

42. By acting in reliance on Mr. Ortiz's false statement, Mr. Peoples was injured: he lost his job as a City of Miami police officer, notwithstanding that:

   a. not only had he not accepted kickbacks from any pirate tow-truck operator, but

   b. the City of Miami had no evidence to present to either a state-court prosecutor, a criminal court, an arbitrator or the Civil Service Board that he had done so.

43. As a direct, natural and proximate result of Mr. Ortiz and the FOP's actions towards Mr. Peoples, he has suffered damages, including but not limited to:

   a. lost earnings,

   b. diminishment of earning capacity and

   c. emotional distress and mental anguish.

44. Mr. Ortiz, on behalf of himself and the FOP, exhibited such wilful disregard of the rights of Mr. Peoples as to entitle Mr. Peoples to recover punitive damages against both Mr. Ortiz and the FOP.

WHEREFORE, Plaintiff, Artice Peoples prays that this Court will grant judgment for him, and against defendants, Javier Ortiz and Fraternal Order of Police, Walter E. Headley, Jr., Miami Lodge No. 20:

**One**, awarding compensatory against Mr. Ortiz and the FOP, jointly and severally, and awarding punitive damages against the Mr. Ortiz and the FOP individually.

**Two,** granting such other and further relief as is just.

Respectfully Submitted,

*/s/ Karen Coolman Amlong*
KAmlong@TheAmlongFirm.com
The Amlong Firm
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983

**Attorneys for the Plaintiff,
  Artice Peoples**

\\amlong3\cpshare\CPWin\HISTORY\210218_0001\182D.05